UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Connecticut Parents Union, | : | CIVIL ACTION NO. |
|    Plaintiff, | : | 3:19-cv-00247 (KAD) |
| | : | |
| v. | : | |
| Dianna Wentzell, et al., | : | |
|    Defendants. | : | March 26, 2019 |

## **DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

The Plaintiff in this case lacks standing to challenge duly enacted state laws concerning Connecticut interdistrict magnet schools. Accordingly, pursuant to both Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) this case must be dismissed.

## BACKGROUND

Plaintiff, the Connecticut Parents Union ("CTPU") brought suit in order to challenge the interdistrict magnet schools "reduced isolation standard" issued on October 23, 2017 by Defendant Dianna Wentzell, Commissioner of the Connecticut State Department of Education, for Connecticut's interdistrict magnet schools. Complaint, Doc. #1 at 6-7.[1] Commissioner Wentzell issued the reduced isolation ("RI") standards pursuant to her authority under Conn. Gen. Stat. § 10-264*l*(a). State law provides that "an interdistrict magnet school program" means, *inter alia*, a program which "supports racial, ethnic and economic diversity." *Id.* The RI standards,[2] with certain exceptions, generally provide that reduced isolation students must make

---

[1] Counsel to CTPU represents plaintiffs in a related action similarly challenging the desegregation standards applicable *in the Hartford region* to Hartford interdistrict magnet schools as result of the Connecticut Supreme Court holding in *Sheff v. O'Neill*, 238 Conn. 1 (1996). *See Robinson v. Wentzell*, 3:18cv00274.

[2] Commissioner Wentzell defined an RI student as follows:
• Is Native American, Asian, Alaska Native, Native Hawaiian, Other Pacific Islander, White and/or Two or More Races (any combination other than Black/African American or Hispanic).
• Is Not Black/African American, Hispanic and/or Two or More Races (any combination of Black/ African American or Hispanic).

Doc. #1-1 at 1.

1

up at least 25% of each interdistrict magnet school's enrollment.[3]  Doc. #1 at 7.

CTPU describes itself as follows:

> The CONNECTICUT PARENTS UNION (CTPU) was established to ensure that "parents, guardians, and families are connected with the educational resources and support system necessary to protect their children's educational rights thus ensuring that neither race, zip-code, nor socio-economic status is a predictor of a child's success."  Founded by current president Gwendolyn Samuel in 2011, CTPU collaborates with parents, teachers, and educational advocates across Connecticut to engage decision-makers to achieve educational reform. CTPU has hosted community events, information sessions, bus tours, and other events in order to educate the public about the statewide racial quota's harmful effects on Connecticut's interdistrict magnet schools and students. CTPU has led, and continues to lead, legislative-reform efforts to repeal the racial quota.

Doc. 1 at 3-4.

The Plaintiff is seeking, *inter alia,* (1) a declaratory ruling that the state laws governing the makeup of the interdistrict magnet schools violates the Equal Protection Clause, and (2) an injunction preventing the Defendants from "using race in future interdistrict magnet school enrollment decisions."  Doc. #1 at 13-14.

"The doctrine of standing, which addresses the question of whether the plaintiff is entitled to have the court decide the merits of the dispute or of particular issues, embraces both 'constitutional' and 'prudential' requirements."  *Sullivan v. Syracuse Hous. Auth.*, 962 F.2d 1101, 1106 (2d Cir.1992) (quotation marks and brackets omitted).  "A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when (as in the case at bar) the plaintiff lacks constitutional standing to bring the action."  *Cortlandt St. Recovery Corp.*

---

[3] Although, it should be noted, these requirements do not commence until 2021-22 for non-*Sheff* interdistrict magnet schools that have been in operation prior to July 1, 2005.  *See* Doc. #1-1 at 2.  There are also several ways in which non-*Sheff* interdistrict magnet schools operating after July 1, 2005 can receive waivers of these standards.  *Id.* at 2-3.  Additionally, all interdistrict magnet schools can receive a waiver of these standards " if the Commissioner determines that it is appropriate to continue the grant (a) for purposes of increasing access to reduced-isolation educational opportunities or (b) because the school has other indices of diversity, such as racial, geographic, socioeconomic, percentage of special education students and EL students, achievement and other factors."  *Id.* at 4.

*v. Hellas Telecommunications*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quotation marks and citation omitted). A Rule 12(b)(1) motion is also the proper vehicle to raise issues of standing and ripeness, both constitutional and prudential. *See, e.g.*, *Wiltzius v. Town of New Milford*, 453 F. Supp. 2d 421, 428 & n.3 (D. Conn. 2006) (constitutional ripeness); *Connecticut v. Spellings*, 453 F. Supp. 2d 459, 491 (D. Conn. 2006), *aff'd as modified sub nom.*, *Connecticut v. Duncan*, 612 F.3d 107 (2d Cir. 2010) (Kravitz, J.) (prudential ripeness).

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). To meet that burden, the plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue" and the court "need not 'credit a complaint's conclusory statements without reference to its factual context.'" *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 & 146 (2d Cir. 2011) (per curiam) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1954 (2009)). When defendants file a Rule 12(b)(1) motion, the court "may refer to evidence outside the pleadings" to decide the motion. *Id*.

To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a probability requirement; the pleading must show, not merely allege, that the pleader is entitled to relief. *Id.* Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id.* However, when

reviewing a motion to dismiss, the court must accept the factual allegations in the operative complaint as true and draw all reasonable inferences in the non-movant's favor. *See Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012).

"Pursuant to the doctrine of prudential standing, a court must ask whether a plaintiff's claim rests on the legal rights of a third party, asserts only a generalized grievance, or asserts a claim that falls outside the zone of interests protected by the legal provision invoked." *Ctr. for Reprod. Law & Policy v. Bush*, 304 F.3d 183, 196 (2d Cir. 2002)(Sotomayor, then Circuit Judge).

In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.

## ARGUMENT

### I. THE PLAINTIFF FAILS TO SATISFY THE REQUIREMENTS FOR ARTICLE III STANDING

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies," which includes the requirement that plaintiffs have standing to sue. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quotation marks omitted); *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013). The standing requirement "is built on separation-of-powers principles" and "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Id.* Consequently, a Court's standing inquiry must be "especially rigorous" when it is asked to nullify or compel an action by the political branches of government. *Id.* at 1147. That is especially true when, as here, the challenge is to the actions of a State's political branches, as the federalism concerns in such cases counsel in favor of even more judicial

restraint.  *See Juvenile Matters Trial Lawyers Ass'n v. Judicial Dep't*, 363 F. Supp. 2d 239, 244 (D. Conn. 2005) (noting federalism underpinnings of Article III standing).

Standing "is not a technical rule intended to keep aggrieved parties out of court," but instead "is a practical concept designed to ensure that courts and patties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and accurately represented." *Economic Enterprises, Inc. v. T.D. Bank N.A.,* 2011 WL 446891, (D. Conn. February 3, 2011). The general rule of standing is that a litigant cannot rest a claim on the legal rights of third parties.  *See Powers v. Ohio*, 499 U.S. 400, 410-411 (1991).

CTPU must satisfy three elements to properly allege constitutional standing: (1) it must have personally suffered an injury in fact that is both concrete and particularized and actual or imminent; (2) there must be a causal connection between Plaintiff's injury and the challenged statute; and (3) it must be likely, and not merely possible or speculative, that the injury will be redressed by a favorable decision.  *Field Day, LLC v. Cty. of Suffolk*, 463 F.3d 167, 175 (2d Cir. 2006).  Plaintiffs bear the burden to "'clearly . . . allege facts" demonstrating each of these elements.  *Spokeo*, 136 S. Ct. at 1547.

### A. THE PLAINTIFF HAS NOT ALLEGED FACTS DEMONSTRATING THAT IT HAS SUFFERED ANY FORM OF COGNIZABLE INJURY

The "injury in-fact" requirement limits the power of federal courts to "protect against injury to the complaining party . . . ."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  For an injury to be sufficiently "particularized" it "must affect the plaintiff in a personal and individual way."  *Spokeo*, 136 S. Ct. at 1548.  The Supreme Court has instructed: "the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.  Is the injury too abstract,

or otherwise not appropriate, to be considered judicially cognizable?" *Allen v. Wright*, 468 U.S. 737, 752 (1984) *abrogated by Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). Thus, it is not enough for the Plaintiff to allege that some students have been harmed in the manner identified in the Complaint. Rather, the Plaintiff must allege facts demonstrating that *it* has personally been so harmed. *E.g., Warth*, 422 U.S. at 499-502; *O'Shea v. Littleton*, 414 U.S. 488, 494-95 (1974). Plaintiffs have not remotely pled such facts.

> Plaintiff claims that it is injured as follows:
>
> 20. The mission of Plaintiff CTPU is to advocate for equal educational opportunity for all children in Connecticut. Defendants' 75% cap on Black and Hispanic enrollment in Connecticut interdistrict magnet schools continues to prevent CTPU from fulfilling its mission to prevent children's skin color from determining their educational opportunities.
>
> 21. Under the statewide racial quota, Black and Hispanic students are denied admission to interdistrict magnet schools in favor of white and Asian students.
>
> 22. This overt discrimination stands in direct opposition to the ability of CTPU to successfully perform its mission, as it compels CTPU to expend a significant amount of time and resources opposing the unconstitutional cap on Black and Hispanic students, at the expense of advancing and promoting other education reforms.
>
> 23. Because of the racial quota, Plaintiff is now and will continue to suffer specific and redressible injury.

Doc. 1 at 9 ¶ 20, 22, 23. At the outset, it is important to note that "Plaintiff['s] conclusory allegations of current risk do not suffice to confer Article III standing." *Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424, 437 (S.D.N.Y. 2015). Rather, the question is whether the Plaintiff has met its burden of pleading facts that establish that its claimed "threatened injury [is] . . . *certainly impending*." *Clapper*, 133 S. Ct. at 1147 (quotation marks omitted, emphasis in *Clapper*). The Plaintiff has not done so, and cannot credibly do so.

More importantly, the Plaintiff lacks an injury-in-fact. The right to attend "free public elementary and secondary schools" in Connecticut – which is at the core of the Plaintiff's complaint[4] – applies only to students. Article VIII, § 1 of the Connecticut Constitution; *see Connecticut Coalition for Justice in Education Funding v. Rell,* 327 Conn. 650 (2018); *Sheff v. O'Neill*, 238 Conn. 1, 25 (1996)("state has an affirmative constitutional obligation to provide all public *schoolchildren* with a substantially equal educational opportunity")(emphasis added); *Horton v. Meskill*, 172 Conn. 615, 648-49 (1977)("in Connecticut, elementary and secondary education is a fundamental right, that pupils in the public schools are entitled to the equal enjoyment of that right. ... "); *Carrubba v. Moskowitz*, 274 Conn. 533, 550-2 (2005) (parents, whose interests are not adverse to their child's, have standing as "next friend."); Conn. Gen. Stat. § 10-186(a) ("Each local or regional board of education shall furnish, by transportation or otherwise, school accommodations so that each *child* five years of age and over and under twenty-one years of age who is not a graduate of a high school or technical high school may attend a public school .... ")(emphasis added); Conn. Gen. Stat. § 10-184 ("each parent or other person having control of a child five years of age and over and under eighteen years of age shall cause such child to attend a public school .... ").

The Plaintiff fails to allege that either it or any of its members have even applied or intend to apply to a Connecticut interdistrict magnet school. *See Student Members of Same v. Rumsfeld,* 321 F. Supp. 2d 388, 394 (D. Conn. 2004)("Though the DoD's actions may give rise to other claims that the students may pursue, as discussed below, the student groups may not sue to vindicate associational claims that are in fact those of YLS, which claims may be and are pursued by its governing authority, its faculty. On this claim, the plaintiffs do not have a

---

[4] The state action of which the Plaintiff complains relates to the composition of certain Connecticut public schools. Under the Connecticut Constitution the General Assembly is explicitly tasked with implementing the right to "free public elementary and secondary schools….by appropriate legislation." Conn. Const., Article 8, Section 1.

cognizable injury-in-fact."). The Plaintiff has therefore not articulated a concrete and particularized injury; the state educational laws at issue have not affected the Plaintiff CTPU in a way so as to confer standing. *See Gratz v. Bollinger,* 539 U.S. 244, 261-262 (2003)(explaining that standing to challenge admissions policies is conferred on a student who intends to apply).

Instead, the Plaintiff alleges that state law interferes with, essentially, its mission statement. The complaint makes clear that the Plaintiff is merely an interest group that has a policy difference with current law in Connecticut. Plaintiff seeks to enlarge this policy difference into constitutional injury/standing by alleging that Connecticut law "compels CTPU to expend a significant amount of time and resources opposing the unconstitutional cap on Black and Hispanic students." Doc. 1 at 9 ¶2. The Supreme Court has made clear that the "'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734 (1972). The Plaintiff is not "among the injured" with respect to the interdistrict magnet school laws at issue. The Plaintiff's policy difference is simply insufficient to give the Plaintiff CTPU legal standing to challenge the laws concerning interdistrict magnet schools. *See Ctr. for Reprod. Law & Policy v. Bush*, 304 F.3d 183 (2d Cir. 2002).

Should this court find that merely opposing state law and allocating resources in contravention of such law confers standing, then nearly every citizen would have standing to challenge every law.[5] Such an exception would swallow the rule of standing and is contrary to the holdings of the Supreme Court. *See, e.g., Valley Forge Christian College*, 454 U.S. 464, 475 (1982) (explaining "the Court has refrained from adjudicating abstract questions of wide public

---

[5] Simultaneous to the filing of this motion, Defendants are moving this court to transfer this case to Judge Underhill because he has a related case (*Robinson v. Wentzell,* 3:18cv00274*)*. Opposing counsel here also represents the plaintiffs in *Robinson*. And the *Robinson* plaintiffs are parents and students who *have explicitly alleged* that they applied to attend Hartford area magnet schools. *See Robinson*, 3:18cv00274, Complaint, Doc. #1 at 4-7 ¶¶ 6 – 14.

significance which amount to generalized grievances [] pervasively shared and most appropriately addressed in the representative branches").

### B. CTPU LACKS ASSOCIATIONAL STANDING

CTPU does not allege in its complaint that it has associational standing. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.") And CTPU does not have such associational standing.

An association has standing to bring suit in its own name on behalf of its own members if: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Bldg. & Const. Trades Council of Buffalo, New York & Vicinity v. Downtown Dev., Inc.*, 448 F.3d 138, 144 (2d Cir. 2006) quoting *Hunt v. Wash. State Apple Adver. Com'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

The first requirement for associational standing, then, is that the members "have standing to sue in their own right." To establish individual standing, a plaintiff must show that: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

As indicated above, CTPU has not alleged, as it must, that it has a single individual member who would otherwise have standing in its own right. In fact, CTPU has not indicated anything about its membership other than a reference to its President and founder. *See* Doc. 1 at 3 ¶2. As explained above, CTPU merely claims that it has been injured as a result of having "to expend a significant amount of time and resources opposing the unconstitutional cap on Black and Hispanic students, at the expense of advancing and promoting other education reforms." Doc. 1 at 22. Even if it can be said that CTPU President Gwendolyn Samuel has expended time and resources opposing Connecticut's interdistrict magnet school laws, such a claim would not give her standing to challenge the constitutionality of Connecticut's interdistrict magnet school laws. *See supra; see also Knife Rights v. Vance,* 802 F.3d 377, 388 (2d Cir. 2015)("Insofar as the organizational plaintiffs sue on their own behalf, they must independently satisfy the requirements of Article III standing.")

### C. AS AN ASSOCIATION CTPU CANNOT ASSERT THE RIGHTS OF ITS MEMBERS FOR CLAIMS MADE PURSUANT TO 42 U.S.C. § 1983

Finally, even if CTPU had properly pleaded members who could establish individual standing, it is the law in the Second Circuit "that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983." *Id.* Thus, CTPU lacks standing to bring § 1983 claims. *See* Complaint, Doc. #1 at 13-14.

### CONCLUSION

The Court should dismiss this case in its entirety with prejudice.

DEFENDANTS

WILLIAM TONG
ATTORNEY GENERAL

BY: /s/ Darren P. Cunningham
    Darren P. Cunningham (ct25380)
    Ralph E. Urban, (ct00349)
    Assistant Attorney General
    Federal Bar No. ct25380
    55 Elm Street. P.O. Box 120
    Hartford, CT 06141-0120
    Tel: (860) 808-5210
    Fax: (860)808-5385
    Darren.Cunningham@ct.gov

## **CERTIFICATION**

I hereby certify that on March 26, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

    /s/ Darren P. Cunningham
    Darren P. Cunningham
    Assistant Attorney General